20 So.2d 734

**HARDY et al. v. UNION PRODUCING CO. et al.**

**No. 37649.**

Dec. 11, 1944.

Rehearing Denied Jan. 15, 1945.

Wilkinson, Lewis & Wilkinson, of Shreveport, for defendants and appellants.

Francis H. Alston, of Logansport, for plaintiffs and appellees.

ROGERS, Justice.

Plaintiffs brought this suit to annul an oil and gas lease and for attorney's fees, predicating their cause of action on the failure of the lessee to drill a well on the leased premises within the primary term of the lease. The judge of the district court, after overruling exceptions of nonjoinder and of no cause of action and referring an exception of no right of action to the merits, heard the case on the merits and rendered judgment annuling the lease, and awarding plaintiffs $500 as attorney's fees. The defendants, Ed E. Hurley, the original lessee, and the Union Producing Company, assignee of the gas and gas rights covered by the lease, have appealed from the judgment.

The lease was executed on September 9, 1938, for a primary term of five years and covers a tract of land containing approximately 47 acres in Fractional Section 10, Township 11 North, Range 16 West, DeSoto Parish, Louisiana.

On December 30, 1940, the lessee assigned the gas and gas rights under the lease to the Southern Production Company, Inc., and on April 7, 1941, the Southern Production Company, Inc., assigned its interest in the lease to the Union Producing Company.

Plaintiffs' suit was filed on October 25, 1943. Plaintiffs alleged as their cause of action that on September 9, 1943, the five-year primary term of the lease had terminated and that the lease was no longer in effect because no well had been drilled on the 47-acre tract covered by the lease, nor had any oil or gas been produced therefrom.

After their exceptions were overruled, defendants filed a joint answer, denying that the lease had expired and averring that it was still in full force and effect because the 47-acre tract covered by the lease had been placed in a drilling and production unit by the Commissioner of Conservation prior to the expiration of the primary term of the lease and that a well, capable of producing gas in paying quantities from the Jeter Zone of the Logansport Field in which the leased land is situated, had been completed and that since its completion, the operator of the well had produced gas therefrom in commercial quantities.

Defendants have not submitted any argument in support of their exceptions and therefore we do not find it necessary to consider them.

Defendants rely, in bar of plaintiffs' demands, on Orders Nos. 28–C and 28–C–6 issued by the Commissioner of Conservation.

On September 10, 1942, the Commissioner of Conservation, pursuant to the provisions of Act No. 157 of 1940, issued his order No. 28–C, dividing the Jeter Zone of the Logansport Field into drilling and production units of approximately 640 acres, with only one well allowed to produce on a drilling unit and providing for the pooling of separately owned tracts of land and allocation of production among

all tracts embraced within the drilling unit in the proportion that the area of each tract bears to the entire area of the unit.

Among the drilling units designated by Order No. 28–C in the Logansport Field is a unit which embraces the following lands, to-wit: Fractional Section Ten with the West half of Section Eleven, Township 11 North, Range 16 West (not including any part of the bed of the Sabine River).

Order 28–C further provided that: "To any well presently producing gas from the Jeter Zone there shall be allocated the acreage comprising the drilling and production unit on which such well is located and so long as there is any well on any of such drilling and production units capable of producing gas in paying quantities no further or additional wells shall be drilled on any such unit."

Plaintiffs' 47-acre tract was pooled, unitized and consolidated for the production of gas from the Jeter Zone of the Logansport Field by Order 28–C–6 of the Commissioner of Conservation. This order was issued pursuant to Act No. 157 of 1940 and in accordance with the provisions of Order No. 28–C, after notice to interested parties and after hearing, integrating, pooling and consolidating the separately owned tracts and mineral interests in the West half of Section 11 and all of Fractional Section 10, Township 11 North, Range 16 West, for the production of gas from the Jeter Zone of the Logansport Field and providing that for all purposes of the leases and sub-lease

contracts covering the unit so far as they affect the production of gas, together with the liquid hydrocarbons contained therein, shall be treated, developed and operated as one lease, one unit, one property and one tract; and that drilling operations, drilling and production on any of the tracts included within the unit shall constitute drilling operations, drilling and production under the terms of each and every one of the leases or subleases.

The Southern Production Company, Inc., drilled and completed a well in the Northeast Quarter of the Northwest Quarter of Section 11, Township 11 North, Range 16 West on December 30, 1941. This well has been producing gas with a small amount of distillate in commercial or paying quantities continuously since that date. The tract of land on which the well is located forms part of the drilling unit in which the tract of land, covered by the lease in this case, was placed by Order No. 28–C and Order No. 28–C–6 of the Commissioner of Conservation. Under the provisions of those orders, the Southern Production Company, Inc., the owner of the well, is designated as the operator of the unit.

This Court, in two recent cases, has held that the orders issued by the Commissioner of Conservation and affecting the Logansport Field were valid. Thus, in the case of Hunter Co. v. McHugh, 202 La. 97, 11 So.2d 495; Id., 320 U.S. 222, 64 S.Ct. 19, 88 L.Ed. 5, the constitutionality of Act No. 157 of 1940 and the validity of Order No. 28–B, which was

superseded by Order No. 28–C, was sustained. And in the case of Hood v. Southern Production Company, Inc., 206 La. 642, 19 So.2d 336, the validity of order No. 28–C itself was upheld.

The defendants contend that there was no violation of their agreement to drill a well on the leased premises during the primary term of the lease because Orders Nos. 28–C and 28–C–6 prohibited the drilling of more than one well on the unit into which the leased premises was incorporated. Defendants assert that their lease was maintained in full force and effect by virtue of the well which was drilled by the Southern Production Company, Inc., on the unit in question.

Plaintiffs are not contesting the right of the State to regulate and control, or even to prohibit, the production of minerals. Nor are plaintiffs contesting the right of the State to impair the obligations of contracts under valid police regulations. The lease involved in this case was entered into before the passage of Act No. 157 of 1940 and prior to the issuance of the unitization Orders Nos. 28–C and 28–C–6. Plaintiffs' position, as we appreciate it, is that the Legislature is wholly without right to pass a law affecting contracts entered into before the passage of the law, unless that law is a valid exercise of the police power and makes the performance of the contracts impossible, in which event the contracts are impaired and become null and all the contracting parties are released from their obligations. In other words, plaintiffs contend that since the contract of lease involved in

this case was entered into prior to the passage of Act No. 157 of 1940, the statutory provisions and orders issued in pursuance thereto are subject to the terms of the contract, unless the contract has been dissolved and the parties restored to the situation in which they were before the contract was entered into. In support of their position, plaintiffs rely on the case of Dillon v. Holcomb, decided by the United States Court of Appeals for the Fifth Circuit, and reported in 110 F.2d 610. This case was decided on March 19, 1940, which was prior to the passage of Act No. 157 of 1940.

The decision in the Dillon case has no application to the question under consideration in this case. In the Dillon case, Dillon executed a mineral lease covering 34 acres. Dillon refused to pool 4 acres of the 34 acres to make up the minimum requirement of 10 acres necessary in order to obtain a permit for drilling. The lessee pooled 4 acres of Dillon's land with 6 acres of the Zylkes-Smith tract for the purpose only of obtaining a permit from the Commissioner of Conservation to drill a well. Dillon's lease stipulated the usual $\frac{1}{8}$th royalty and an overriding royalty of $\frac{1}{16}$th. The Zylkes-Smith lease stipulated $\frac{1}{8}$th royalty. Dillon insisted that he be paid on the basis of the royalty provision in his own lease and refused to join in any arrangement by which he should receive only $\frac{4}{10}$ of $\frac{1}{8}$. Acquiescing in the pooling of his 4 acres with 6 acres of adjoining leasehold, Dillon claimed in addition to $\frac{4}{10}$ of $\frac{1}{8}$ royalty his overriding royalty of $\frac{1}{16}$ of lessee's $\frac{7}{8}$. It was on

these facts, in the absence of a modifying agreement, that the Court of Appeal awarded Dillon his overriding royalty in addition to his proportionate part of (4/10) of the usual one-eighth royalty. There, Dillon's acreage was not conventionally pooled, nor was it pooled or integrated with other acreage by order of the Commissioner. Moreover, the suit was instituted prior to the effective date of Act No. 157 of 1940

In the present case, there is no question of an overriding royalty. The only question here is whether the lease was maintained in full force and effect by virtue of the production of gas in paying quantities from the unit established during the primary term of the lease by orders Nos. 28–C and 28–C–6 issued by the Commissioner of Conservation.

Plaintiffs argue that, under the terms of the lease, defendants were merely given the right to go upon the leased premises and drill for oil or gas which, if they were successful in doing, they were to retain ⅞th of whatever oil or gas was produced and would pay the remaining ⅛th to the lessors as royalty. Plaintiffs insist the obligation imposed upon the lessee under the lease was that they must drill a well on the leased premises and that until that obligation was performed, the lessee was not entitled to receive any portion of the oil or gas beneath the land; that the time in which the lessee had the right to drill the well was limited to five years, and that since no well was drilled on the leased premises within five years, the lease has lapsed and plaintiffs are entitled to have it cancelled and its inscription erased from the public records.

Plaintiffs' argument is not tenable because the defendants in reality have not failed to perform any obligation of their contract. There was no obligation resting upon the defendants to drill a well during the primary term of the lease in the circumstances of this case according to a reasonable interpretation of the contract. If the contract should be annulled, plaintiffs could not drill a well on their 47-acre tract of land because it forms a part of the 640-acre drilling unit on which a well drilled by the Southern Production Company, Inc., is producing gas in paying quantities. Plaintiffs, as the owners of the leased premises, are entitled to receive the same revenue as they would receive if the well located in the Northeast Quarter of the Northwest Quarter of Section 11 was located on their 47 acres in Fractional Section 10. In other words, if the well of the Southern Production Company, Inc., was located on plaintiffs' 47-acre tract of land in Fractional Section 10, the production would be prorated among all the owners of the mineral rights in the drilling unit in the same proportion in which the production is now being distributed.

This case falls within the principle decided by this Court in Hood v. Southern Production Co., Inc., supra, wherein the effect of Order No. 28–C, increasing the size of drilling units in the Logansport Field from 320 to 640 acres, was involved. Hood sought to obtain the cancellation of

the lease on the ground that the lessee had violated the covenant to drill an offset well to protect his land from drainage. Act No. 157 of 1940 was in effect at the time, but the Department of Conservation had not established drilling units in the Logansport Field. The provision in the printed form of the lease permitting the lessee to unitize the leased land with other lands or leases in order to form a drilling or production unit was deleted. This Court said the deletion of this provision "did not, because it could not, interfere with the authority of the Commissioner of Conservation, * * * to compel the combining or unitizing of the leased premises with other land or lands or mineral interests for the purpose of forming a drilling unit, for the prevention of waste and to avoid the drilling of unnecessary wells." [206 La. 642, 19 So.2d 340.] The Court expressed itself with reference to the disputed clause in the lease as follows: "Our opinion is that the clause in the lease now in contest, requiring that, in the event a well producing oil or gas in paying quantities should be brought in on adjacent land and should be draining the leased premises, the lessee should drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances, is not applicable to his case, especially where the well that is said to be draining the leased premises is on land within the 640-acre drilling unit of which the leased land forms a part, and where the lessee is forbidden by the orders of the Department of Conservation * * * to drill a well on the leased premises."

So in this case, the clause in the lease requiring defendants to drill a well on the leased premises within the primary term of five years is not applicable where a well producing gas in paying quantities has been drilled on land within the drilling unit of which the leased land forms a part and where the lessee is prohibited by orders of the Department of Conservation from drilling a well on the leased premises. In other words, the right of defendants to drill a well on the 47-acre tract covered by the lease was in effect taken away from them by the orders of the Commissioner of Conservation, with, however, the right reserved to them, as well as to the plaintiffs, to share in the production of the gas produced from the unit in proportion to their ownership. Defendants' hands were literally tied as the result of the orders issued by the Commissioner of Conservation and they could do nothing whatsoever to prevent the primary term of the lease from expiring without drilling a well thereon.

Our conclusion is that the judgment appealed from is wrong and that it should be reversed.

For the reasons assigned, the judgment appealed from is annulled, and plaintiffs' demands are rejected at their cost.

FOURNET, J., concurs in the decree.