O’NIELL, Chief Justice.
 

 The question in these cases is whether an order of the Conservation Department,, increasing the size of the drilling units, theretofore prescribed by the department in a given oil or gas field, can have the effect of superseding pooling agreements, made between owners of adjacent lands, under authority of the previous order of the commissioner.
 

 The plaintiffs, in two separate suits, are suing for the cancellation of two oil and gas leases and two pooling agreements, made by one of the plaintiffs, Frank R.. Alston, with the defendants. The plaintiffs contend that the defendants have refused to pay the royalties due under the leases and' pooling agreements. Frank R. Alston asks' also for a judgment for $3,533.02, in suit No. 37,640, for royalties from May 22,. 1942, to March 31, 1943, alleged to be due under the pooling agreement dated August
 
 *373
 
 21, 1941; and Francis H. Alston asks for $1,323.19, in suit No. 37,641, for royalties from May 22, 1942, to September 1, 1943, alleged to be due under the pooling agreement dated August 20, 1941. The pooling agreements provided for production units of 320 acres.
 

 The defendants filed exceptions of nonjoinder and of no cause or right of action. The exceptions of nonjoinder and of no cause of action were overruled, and the exceptions of no right of action were referred -to the merits. In their answers the defendants admitted the execution of the pooling agreements and admitted that they had not paid royalties in accordance with the agreements since May 21, 1942. They averred that thereafter they tendered to the plaintiffs royalties in accordance with the orders of the Department of Conservation, known as Orders 28-C, 28-C-6 and 28-C-8, which established drilling units of 640 acres, and which superseded the pooling agreements.
 

 The judge of the district court, after hearing the cases, overruled the exceptions of no right of action and gave judgments for the plaintiffs for the sums of money claimed as royalties under the pooling agreements, but rejected the demands for cancellation of the leases and pooling agreements, and recognized the leases and pooling agreements to be valid and in effect. The judge also rejected the plaintiffs’ demands for attorney’s fees for the cancellation of the leases. The defendants appealed, and the plaintiffs, answering the appeal, ask again for a cancellation of the leases and for the attorney’s fees. The defendants are not urging their exceptions in this court.
 

 On September 9, 1940, Frank R. Alston executed an oil and gas lease to Paul Pewitt on the 40 acres forming the S. W. % of S. W. % of Section 11, and on May 10, 1941, Pewitt assigned the lease to the Southern Production Company. On November 8, 1940, Frank R. Alston executed another lease in favor of the Southern Production Company, on the S. % of N. W. % and N. % of S. W. % and S. E. % of S. W.
 
 %
 
 and W.
 
 y2
 
 of S. E.
 
 y,
 
 and S. E. of S. E. % of Section 11, containing 320 acres. On September 19, 1941, Frank R. Alston sold the S. W. % of S. W. % of Section 11 to Francis H. Alston. All of Section 11 is in the Logansport gas field.
 

 The lease dated September 9, 1940, did not give the lessee the right to pool the leased land. But the lease dated November 8, 1940, contained a clause permitting unitization of the land described in that lease, or any portion thereof, with any adjacent tract, to make up an area not exceeding 160 acres, or not exceeding the area prescribed by the Department of Conservation if the department should prescribe a unit larger than 160 acres. The plaintiffs contend that that lease, so far as it authorize^ pooling and unitization, was superseded by the pooling agreements entered into on August 20 and 21, 1941.
 

 On November 18, 1940, the Southern Production Company assigned its lease to the Ohio Oil Company; and on December 27, 1940, the Ohio Oil Company assigned
 
 *375
 
 the lease to the Southern Production Company so far as it covered gas and distillate.
 

 Two wells were completed in Section 11, to what is called the Jeter horizon, and produced gas and distillate. One of the wells was completed on December 30, 1940, and was known as the Bland Well. It was located in the N. W. J4 of the section. The other well, known as the Alston-Frost well, was completed on January 26, 1941, in the S. E. J4 °f the section.
 

 On August 20, 1941, Frank R. Alston entered into a pooling agreement with the defendants, whereby 80.1 acres of his land was placed in the unit comprising the N.
 
 y2
 
 of the section; and on August 21, 1941, Frank R. Alston entered into another pooling agreement, whereby his remaining acreage, consisting of 281.26 acres in Section 11, was placed in the unit comprising the S. % of Section 11. These pooling agreements conformed with an order called Order 28, rendered on June 27, 1941.
 

 The plaintiffs were paid royalties from August 20, 1941, to May 21, 1942, under the terms of the pooling agreement, at the ratio of 80.1 to 321.44 of the one-eighth of the gas and distillate produced from the well located on the N.
 
 y2
 
 of Section 11. And, they were paid royalties from August 21, 1941, to May 21, 1942, under the terms of the pooling agreement, at the ratio of 281.26 to 321.44 of the one-eighth of the gas and distillate produced from the well located on the S. % of Section 11.
 

 On February 10, 1942, the Department of Conservation issued Order No. 28-C, dividing the Logansport gas field into drilling units of 640 acres, allowing only one well to be drilled on any one unit. The order expressly allowed the W.
 
 y2
 
 of Section 11 to be combined with fractional Section 10, to comprise 610 acres, and the E. % of Section 11 to be combined with the W.
 
 y2
 
 of Section 12, to comprise 640 acres. Francis H. Alston owned 40 acres in the W.
 
 y2
 
 of Section 11, and Frank R. Alston owned 200 acres in the W.
 
 y2
 
 of Section 11, and 120 acres in the E.
 
 y2
 
 of Section 11.
 

 On June 26, 1942, the Department of Conservation, after giving the notice and hearing required by the statute, issued the Orders, 28-C-6, unitizing the W.
 
 y2
 
 of Section 11 with fractional Section 10, and 28-C-8, unitizing the E. % of Section 11 with the W.
 
 y2
 
 of Section 12.
 

 Thereafter the defendants tendered to the plaintiffs royalties accruing to them in accordance with Orders 28-C-6 and 28-C-8, and on the basis of 610 acres to one of the units and 640 acres to the other unit. The defendants claimed that these orders superseded and abrogated the agreements dated August 20 and 21, 1941. The plaintiffs claim that the royalties should have been paid according to the terms of those agreements; that is, on the basis of 320 acres to the unit. The question therefore is whether the plaintiffs’ royalties should be computed in accordance with the pooling agreements, or in accordance with Orders 28-C, 28-C-6 and 28-C-8, issued subsequent to the making of the pooling agreements? And, if the royalties should be computed according to the agreements, should the leases and pooling agreements
 
 *377
 
 be cancelled for failure of the lessees to pay the royalties according to the pooling agreements ?
 

 Order 28-C, increasing the drilling units to 640 acres in the Logansport Field, and the unitization Orders 28-C-6 and 28-C-8 are valid orders. Act 157 of 1940 authorizes the Commissioner to change the established units if conditions require it. In Paragraph 3 of Section 3 of the act it is provided that “the Commissioner shall have authority to make, after hearing and notice as hereinafter provided, such reasonable rules, regulations and orders as may be necessary from time to time.” The only restriction on the authority of the Commissioner to establish drilling units is that such an order must be reasonable and the unit prescribed must not exceed the maximum area which one well can efficiently and economically drain. In the absence of a showing to the contrary, we assume that the Commissioner’s finding in this instance, which was preceded by the notice and hearings required by the statute, determined correctly that one well could efficiently and economically drain 640 acres. The Commissioner’s order, increasing the size of the units from 320 to 640 acres, was made necessary by a Federal order, called Order No. M-68, which provided that “No material may be used for the drilling of any oil well on less than 40 acres, or any gas well on less than 640 acres, on or after December 23, 1941.” The Commissioner’s authority is subordinate to that of the Federal Government during the emergency caused by the war.
 

 Order 28-B, on which the plaintiffs rely, and which was the authority for the pooling agreements, made provision for changes to be made by the Commissioner of Conservation, — thus : “This order [No. 28-B] shall be subject to change by the Commissioner, after notice and hearing as prescribed by law and by the rules of the Commissioner.”
 

 It is argued by the plaintiffs that such power in the Commissioner would be dangerous, for if he could increase the unit to 640 acres he might make it 1,280 or 2,560 acres. But the argument overlooks the provision in the statute that the orders of the Commissioner must be preceded by due notice and hearing, and that anyone affected by such an order has the right to complain if the order is unreasonable or arbitrary, and to have his complaint reviewed by the courts. It is so provided in Section 11 of Act 157 of 1940.
 

 An order of the Department of Conservation increasing the size of the drilling units theretofore established by an order of the department, in a given oil or gas field, may supersede contracts made between landowners or leaseholders in the oil or gas field under authority of the previous order of the department, without being subject to the objection that the later order is unconstitutional for impairing the obligations of such contracts. Hunter Co. v. McHugh, 202 La. 97, 11 So.2d 495; Id., 320 U.S. 222, 64 S.Ct. 19, 88 L.Ed. 5. See also Hood v. Southern Production Co., 206 La. 642, 19 So.2d 336; Placid Oil Co. v. North Central Texas Oil Co., 206 La.
 
 *379
 
 693, 19 So.2d 616; Hardy v. Union Producing Co., 207 La. 137, 20 So.2d 734.
 

 The judgments appealed from are annulled, and the plaintiffs’ demands are rejected and their suits are dismissed at the -cost of the plaintiff in each case.