*908
 
 HAMITER, Justice
 

 (dissenting).
 

 I am unable to subscribe to the majority opinion and holding herein.
 

 Order No. 92-2 of the Commissioner of Conservation, issued July 23, 1945, or only three days before the expiration of the primary terms of the instant leases, did not and could not affect the 160 acres (in Section 8) lying outside of the unit (Section 5) established by the order. In the first place the Commissioner’s decree shows by its very terms that its application or effect is restricted to property within the unit, it reciting that “* * * drilling operations, drilling and production on any of the tracts included
 
 within said unit
 
 shall constitute drilling operations, drilling and production under the terms of each and every one of said leases or sub-lease contracts
 
 affecting the property included within. said unit.”
 
 Secondly, to interpret the order as affecting and binding on plaintiff’s property that is not within the unit is to render the order, as well as Act No. 157 of 1940 (under which it was issued), unconstitutional, null and void, being violative of the constitutional guaranty that no person shall be deprived of his property without due process of law and without adequate compensation. Under such an interpretation, the present lessees would hold under lease indefinitely plaintiff’s acreage located outside the unit without the payment therefor of any royalty or other compensation, not even delay rentals, notwithstanding that the contracted primary terms of the leases have expired. (Italics ours.)
 

 Cited in support of the majority opinion are the cases of Hardy et al. v. Union Producing Company et al., 207 La. 137, 20 So.2d 734, and Crichton et al. v. Lee et al., 209 La. 561, 25 So.2d 229, in each of which
 
 the entire lease involved
 
 was within the limits of the established unit, an important factor not existing here. This court in each of those cases continued the lease in force and effect, as the language thereof indicates, for the twofold reason that (1) the lessor would share in the royalties from the unit in proportion to the
 
 entire acreage covered by his lease
 
 and (2) the lessee was unable to drill on any part of the leased property, in fulfillment of its contract, because of the utilization order.
 

 In the Hardy case [207 La. 137, 20 So. 2d 737], we observed: “So in this case, the clause in the lease requiring defendants to drill a well on the leased premises within the primary term of five years is not applicable where a well producing gas in paying quantities has been drilled on land within the drilling unit of which the leased land forms a part and where the lessee is prohibited by orders of the Department of Conservation from drilling a well on the leased premises. In other words, the right of defendants to drill a well on the 47-acre tract covered by the lease was in effect taken away from them by the orders of the Commissioner of Conservation, with, however, the right reserved to them, as well
 
 *910
 
 as-to the plaintiffs, to share in the production of the gas produced from the unit in proportion to their ownership. Defendants’ hands were literally tied as the result of the orders issued by the Commissioner of Conservation and they could do nothing whatsoever to prevent the primary term of the lease from expiring without drilling a well thereon.”
 

 And in the Crichton case [209 La. 561, 25 So.2d 234] the following language is found:
 

 “So, if the lease should be annulled, plaintiffs could not themselves drill a well on the land described in the lease because it constitutes a part of the unitized area of the Cotton Valley Field, in which numerous producing wells have long since been completed and are still producing in paying quantities, since the order makes the Cotton Valley Operators Committee the operator of the unitized and pooled areas.
 

 “And further, plaintiffs as the owners of the leased premises are entitled to receive the same proportionate share of the revenues from producing wells on any lands in the unitized area as they would receive if a well producing in paying quantities were drilled upon the property covered by the lease. * * *”
 

 The situation in this litigation differs greatly from that in each of the cited cases. Nothing will be paid plaintiff, as pointed out above, for a continuance of the leases on the 160 acres not within the unit. Moreover, the lessee here was able to protect its interest in the property lying outside the unit by drilling on it within the primary terms of the leases, just as it was obligated to do; for there was nothing in the Commissioner’s order in question, or in any other order, tying the defendant’s hands, or prohibiting it from drilling on the disputed area.
 

 The majority holding is predicated largely on the theory that to fail to continue in force the instant leases in their entirety would be to effect a division of the obligations of the contracts, thereby impairing the rights of the parties, in contravention of the jurisprudence of this state which declares oil and gas leases indivisible. That doctrine of indivisibility, as a reading of the cases applying it will disclose, is applicable only as between the contracting parties, their heirs or assigns. The situation here was not caused by the lessor; it was brought about solely by the intervention of a third person — the Commissioner of Conservation — in the exercise of his police power to protect and conserve the state’s natural resources. What he did, by virtue of his order, was to continue in force the leases in question as to a portion of the acreage covered (that within the unit), which leases otherwise would have lapsed in their entirety because of the expiration of the primary terms. Unquestionably, there resulted a division of, or
 
 *912
 
 rather a reduction in, the leased acreage; but there was no division of the obligations of the contracts. Neither was there any impairment of the rights of the parties.
 

 Surely the Commissioner’s order here did not impair the contractual rights of the parties any more than did the one in Alston v. Southern Production Company, 207 La. 370, 21 So.2d 383, 386. The parties to the leases in that case had agreed that there would be no pooling in units larger than 320 acres. The Commissioner of Conservation, however, increased the size of the unit, by an appropriate order, to 640 acres. The order was held valid by this court, and the lessor was compelled to accept royalties only on the basis of the 640 acre unit, not on the basis of a 320 acre unit. Said the court: “An order of the Department of Conservation increasing the size of the drilling units theretofore established by an order of the department, in a given oil or gas field, may supersede contracts made between landowners or leaseholders in the oil or gas field under authority of the previous order of the department, without being subject to the objection that the later order is unconstitutional for impairing the obligations of such contracts. * * *”
 

 Since the Commissioner, for the establishment of a unit, has the authority in law to add acreage to that covered by a particular lease, thereby effecting a change in the royalty provision of the contract, it would seem to follow logically that for the same purpose he can legally cause to be excluded from a lease a portion of the acreage provided for therein.
 

 But if the facts of this case warranted the application of the doctrine of indivisibility (which I deny), the very holding of the majority effects a division of an obligation of the contracts. What is divided by the holding is the lessee’s obligation to pay royalty to the lessor. Under the contracts the lessee obligated itself to pay to the lessor royalty on the basis of the entire acreage leased (400 acres), not on a fractional basis or on only that portion lying within the Commissioner’s established unit.
 

 My views accord thoroughly with the following observations contained in the brief of plaintiff’s counsel: “The only basis for sustaining these Conservation Orders is that they are fair and reasonable and do justice and equity to all parties concerned. Under the defendants’ contention, if a lease contained 1000 acres and only one acre happened to be placed within a unit and no well was drilled on that particular acre, nevertheless, the entire 1000 acres would be held indefinitely beyond the primary term but would share in only %4o x
 
 Ys,
 
 or %i20ths of the production from the unit. Such a result as this makes it obvious that neither the Legislature nor the Commissioner intended any such thing.”
 

 For these reasons I respectfully dissent.
 

 HAMITER, J., dissents from the refusal to grant a rehearing.