91 So.2d 423 (1956)
Sam YORK et al., Plaintiffs-Appellants,
v.
J. A. HARPER, Defendant-Appellee.
No. 8510.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1956.
Bolin & Bolin, Shreveport, for appellants.
Thompson, Thompson & Sparks, Monroe, for appellee.
GLADNEY, Justice.
This is a jactitation or slander of title suit which has for its purpose the cancellation of a certain mineral lease affecting land within the confines of the Delhi-West Delhi oil field, situated in Richland Parish, Louisiana. Following the filing of plaintiffs' petition on January 9, 1954, the defendant appeared and filed an exception of no cause or right of action, which, after hearing, was sustained and plaintiffs' demands were rejected, hence this appeal.
Sam York, Roy L. Binion and R. S. Wilson, plaintiffs herein, allege themselves to be the owners of a one-fourth interest of the minerals in and under the Southwest Quarter of the Northwest Quarter (SW ¼ of NW ¼) of Section 26, Township 17 North, Range 9 East, containing forty (40) acres. Said interests were acquired by Sam York by a mineral deed dated November 23, 1944, and subsequently he conveyed a 1/12th interest to Binion and a like interest to Wilson. It is alleged that York and Binion on July 31, 1951, executed an oil and gas lease in favor of J. A. Harper and on March 28, 1952, Wilson executed in favor of the defendant, Harper, a "Colessor's Agreement", which was filed for record on May 22, 1952.
The substance of plaintiffs' cause of action is then alleged in paragraphs 7 and 8 thereof, which allegations are herein set forth in full:
"Petitioners allege that the said Sam York and Roy L. Binion signed said purported lease and petitioner, Roger S. Wilson, signed said Co-Lessor's Agreement on the fraudulent representation by the said J. A. Harper that he was going to drill a well on the particular property above described immediately *424 after the execution of said document; that petitioners had the utmost confidence in said defendant, J. A. Harper, and believed that he would begin the drilling of a well in accordance with his statement; that the said J. A. Harper had no intention of drilling said well on the above described property and has not done so; that, although the said defendant, J. A. Harper, led petitioners to believe that the well would be drilled by him, the said J. A. Harper did not and refused to obligate himself to drill said well.
"Petitioners further show, therefore, that the aforementioned purported oil and gas lease was signed by petitioners, Sam York and Roy L. Binion, without any consideration whatsoever, and that the said Co-Lessor's Agreement was signed by petitioner, Roger S. Wilson, without any consideration whatsoever, and that their signatures to said documents were obtained through fraudulent representation, as above alleged, and that said documents are void and of no effect ab initio and should be ordered cancelled, insofar as petitioners are concerned, from the Conveyance Records of Richland Parish, Louisiana."
The exception of defendant designated an exception of no cause or right of action, is in reality an exception of no right of action. The exception avers:
"That subsequent to the execution of the mineral lease and the co-lessor's agreement which plaintiffs seek to cancel and erase in this suit, they and each of them entered into and executed the Unitization Agreement covering the Delhi-West Delhi Field situated in Richland, Franklin and Madison Parishes; that in said Unitization Agreement which was executed subsequent to the date of said lease and co-lessor's agreement which they now seek to cancel, plaintiffs agreed that it was not necessary to drill a well on said land, but instead agreed that operations anywhere on the land comprising said unit would maintain in full force and effect the agreements which plaintiffs now seek to cancel.
"Defendant further avers that said Unitization Agreement was executed by Sam York on September 9, 1952 and recorded in Book 153, File 152073, Richland Parish, Louisiana; that the agreement executed by R. S. Wilson is dated January 8, 1953 and recorded in Conveyance Book 154, File 154720, Richland Parish, Louisiana, and that the agreement executed by Roy Binion is dated August 26, 1952, and is of record in Conveyance Book 152, File 151845, Richland Parish, Louisiana, all of which are by reference made a part hereof."
Upon trial of the exception, the above referred to instruments were filed in evidence and show that on the dates so specified plaintiffs became signatories to the Unitization Agreement. The unitized area was depicted upon a plat annexed and made a part of the Agreement and embraces the property which is the subject of this suit as a production unit bearing the designation: Tract No. 82.
Upon referring to the oil, gas and mineral lease in question which was made a part of plaintiffs' petition, we observe the lease grants the right of servitude for the consideration of $10 and other valuable considerations, and without mentioning any obligation to drill. The contract further provides: "If operations for drilling are not commenced on certain land on or before one year from this date, the lease shall then terminate as to both parties, unless on or before such anniversary date lessee shall pay to lessor * * * the sum of $40.00 (herein called rental) which shall cover the privilege of deferring commencement of drilling operations for a period of twelve months."
*425 The petition nowhere alleges defendant was obliged to commence drilling operations before any certain date or that plaintiffs had placed the obligor in default prior to their execution of the unitization contract.
The judge a quo reasoned that the moving consideration for the execution of the oil and gas lease in question was the representation by the defendant, J. A. Harper, that he would drill a well on the land covered by the lease, but before Harper could perform his obligation to drill, plaintiffs entered into and executed the aforesaid Unitization Agreement, the provisions of which had the effect of relieving the defendant of his obligation to drill; and that by reason of production in accordance with the Unitization Agreement the lease was maintained in full force and to the same extent as if the well had been drilled on the tract.
Counsel for appellants argue the lease was void "ab initio" for a total lack of consideration, and the statements and representations by defendant that he would drill a well constitute no consideration whatsoever, and at the most, constitute a potestative condition, therefore, it is concluded the lease should be declared null and void, and erased from the records. The defendant contends that even though it be conceded, as it must upon the trial of the exceptions, that the defendant paid no monetary consideration and although he agreed to drill a well, which he did not do, that nonetheless the contract was changed and defendant's obligation fulfilled when plaintiffs agreed to the terms of the Unitization Agreement. In effect, the defendant asserts that the drilling of a well anywhere upon the unitized area affords plaintiffs the same royalties as if the well had been drilled upon unit No. 82.
Since the enactment of Act 157 of 1940, a conservation statute presently incorporated in LSA-R.S. 30:1 et seq., owners of oil and gas in place are permitted to conventionally pool their mineral interests and combine their holdings within a unit and prescribe the conditions of drilling thereon in the distribution of the production from the unit. In the instant case the parties to this law suit entered into a conventional agreement and thereby yielded authority to the management of the unit to prescribe the method and manner in which the wells thereon should be drilled.
It is not even suggested in argument or brief defendant's right to perform the drilling operations had ceased prior to the time plaintiffs executed the Unitization Agreement. Appellants' position seems to be that by reason of the confection of the Unitization Agreement, defendant did nothing by way of performance and this did not fulfill the terms of his obligation. It should be observed that if defendant had a right to drill under the terms of his lease at the time the Unitization Agreement came into being, he was prevented from exercising that property right when plaintiffs signed the Unitization Agreement.
We find untenable the contention that defendant's obligation to drill was at best a potestative condition. See Article 2034 and Article 2035 of the LSA-Civil Code. Article 2035 declares that if the condition be that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void. Thus in Saunders v. Busch-Everett Company, 1916, 138 La. 1049, 71 So. 153, the court held that a contract whereby the owner of land grants to another in consideration of payments, made and to be made, of certain agreed sums of money and other considerations which are to arise in a certain contingency, his right, or option, to drill for oil or gas within a year and to extend the time thus granted until it reaches a certain limit, contains no potestative condition by reason of its failure to impose upon the grantee any obligation to drill, since it is not within the contemplation of the contract that he should drill, unless he so elects. The court *426 stated the purpose of the contract was to confer the right to drill without imposing the obligation, and there is nothing in that purpose or in the nature of the contract which contravenes any law of this state.
Appellants' assertion that ratification of the lease could not take place because it was void ab initio is without merit. Article 11 of the LSA-Civil Code provides that "individuals cannot by their conventions, derogate from the force of laws made for the preservation of public order or good morals." When a contract or obligation falls under this prohibition it is an absolute nullity and cannot be ratified or affirmed in the courts of our state. The same codal article also declares that "in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good." The latter provision of the article refers to absolute nullities which are established for the interest of individuals. With reference to these, the Supreme Court in Brownson v. Weeks, 1895, 47 La. Ann. 1042, 1059, 17 So. 489, 495, quoted from Vaughan v. Christine, 3 La.Ann. 328, as follows:
"But, in relation to absolute nullities established in the interest of individuals, the rule is, as to onerous contracts, without exception, that the party in whose favor they are established may ratify the contracts, either expressly or impliedly. In all cases of executed contracts susceptible of tacit ratification, a presumption of ratification juris et de jure results from silence and inaction during the time fixed for prescription."
Chief Justice O'Niell in Louisiana Sulphur Mining Company v. Brimstone R. & Canal Company, 1918, 143 La. 743, 749, 79 So. 324, 326, noted that:
"The test, as to whether the act is only voidable or absolutely void, with that regard, is, not whether it might or might not be ratified, but whether the nullity is only latent or is apparent on the face of the instrument. A sale made by one who does not own the property and has no authority from the owner to sell it might be ratified by the owner, but it is nonetheless void, not merely voidable."
Consequently, it is quite clear that any failure of consideration on the part of Harper such as the failure to drill was one which appellants could waive and by such waiver give validity to the original contract. This is what appellee says occurred by reason of the execution of the Unitization Agreement by each of the plaintiffs.
Plaintiffs insist the obligation of the lessee was that he must drill a well on the leased premises and that until that obligation was performed he was not entitled to receive any portion of the oil or gas beneath the land; that inasmuch as he has not drilled upon the land in accordance with his promise, the lease has lapsed and plaintiffs are entitled to have it canceled and its inscription erased from the public records.
It is pointed out in Hardy v. Union Producing Company, 1944, 207 La. 137, 20 So. 2d 734, 736, where this same contention was made, that the "argument is not tenable because the defendants in reality have not failed to perform any obligation of their contract"; and that if the contract under consideration should be annulled, plaintiffs could not themselves drill a well on the land described in the lease, because it constituted a part of the unitized area. In Crichton v. Lee, 1946, 209 La. 561, 25 So.2d 229, 234, the court said:
"And further, plaintiffs as the owners of the leased premises are entitled to receive the same proportionate share of the revenues from producing wells on any lands in the unitized area as they would receive if a well producing in paying quantities were *427 drilled upon the property covered by the lease. In other words, if a well were drilled on their tract of land, the production would be prorated among all the owners of mineral rights in the drilling unit in the same proportion in which the production is now being distributed."
The Unitization Agreement and particularly 7(a) expressly provides in part that drilling conducted on any part of the unit area with respect to the unitized zone and production of unitized substances from any part of the unit area shall be considered as operations of production from the whole of the unit area, from each tract within the unit area and from each of the leases. It is further therein stated such operation of production shall maintain and perpetuate each and every one of the leases and other interests just as though such operation and production were conducted on such lease or other interest. The effect of the provisions of the Unitization Agreement is to confer upon plaintiffs the same royalties they would have received had a well been drilled by defendant on tract 82 as a part of the unitized area.
Appellants point to several provisions in the Unitization Agreement as preserving their legal rights to attack the validity of the lease. They argue that paragraph 7(a), supra, presupposes a valid and subsisting lease. Reference is also made to paragraph 17(c) which reads:
"The execution or ratification of this agreement by parties asserting conflicting claims of title to the royalty or operating interests in any tract within the Unit Area shall not prejudice or be in derogation or defeasance of any such claims of title."
Another clause relied upon is 17(j) which permits an individual by executing one agreement to bind himself in several different capacities of ownership. We fail to find these provisions pertinent to the question under consideration, which is whether an obligation to drill a well has been fulfilled as a result of the parties modifying their existing contract. There are no conflicting claims of title herein involved.
Therefore, it must be concluded: that the defendant's obligation to drill on the property in which plaintiffs have their mineral interests, has been fulfilled and plaintiffs have not been prejudiced from the fact no well has been drilled on the lease forasmuch as they are entitled to the same from their property irrespective of whether production comes from a well not situated upon tract 82; and that the lease was a valid and subsisting lease when plaintiffs executed the Unitization Agreement, at which time the defendant possessed a property right which entitled him to drill, and his obligation to do so was waived by plaintiffs.
For the foregoing reasons it is our opinion that the court a quo was correct in sustaining the exception of no right of action and rejecting plaintiffs' demands. The judgment from which appealed is, therefore, affirmed at appellants' cost.