McCALEB, Justice
(dissenting).
The gravamen of the result reached by' the majority here, and by the Court of Appeal below, appears to be that nothing occurred during the primary term of the lease to prevent the lease from expiring. I do not agree.
Albeit, at the time the leased area in question was included in the voluntary unit, the well was shut-in and there was no production in fact, the lease provided for constructive production through shut-in royalties. I do not believe that the fact that shut-in royalty payments were not tendered until after the primary term expired is determinative with regard to the issue of constructive production. By the terms of the lease, shut-in royalties were not such as were payable at the option of the lessee in order to keep the lease alive beyond the primary term but, rather, were absolute' obligations which began to accrue once the' leased 'area was included within a unit con-. *73 taining a shut-in well. The royalties were owed, although not due, at the time the primary term of the lease expired. Payment was tendered before the due date and no ground for cancellation of the lease arose from non-payment of these royalties. The fact that the lessor acquired a valid right to shut-in royalties during the primary term is sufficient, in my opinion, to constitute constructive production and to extend the life of the lease.
Further, I cannot agree with the construction given to Paragraph 7, Section (c) of the lease by the majority, which would limit the effect of shut-in royalties to situations where the shut-in well is physically located on the leased land. This resolution would apparently justify the cancellation of leases on land voluntarily pooled with other land on which the well is situated unless such well is always in production and even though it is shut-in for lack of a market or otherwise. But such conclusion is not sound; the lease must be read as a whole and Paragraph 14 fully clarifies any ambiguity that might be present in Paragraph 7, Section (c) thereof. Paragraph 14 states, in part:
“As between the parties hereto the entire acreage so pooled into a drilling or prodicction unit or units shall be treated, for all purposes except the payment of royalties and the lieu royalties on the production from the pooled unit or units; as if it were included in this lease. In lieu of the royalties and the lieu royalties elsewhere herein specified, Lessors shall receive, on the production from each unit created hereunder, only such proportion of the royalties stipulated herein as the amount of Lessors’ acreage (mineral or royalty rights) placed in the unit bears to the total acreage included in the particular unit involved.” (Emphasis supplied).
The result reached by the majority renders this part of Paragraph 14 of no effect. Also, the realities of the situation make it immaterial whether the well is located on the lessor’s land or in some other part of the pooled unit, for the lessor’s right to revenue will be the same in either case. See Hardy v. Union Producing Co., 207 La. 137, 20 So.2d 734.
I believe that the inclusion of the leased area within a unit which contained a well, capable of profitable production, and the consequent accrual of a right to shut-in royalty payments on behalf of the lessor during the primary term of the lease had the effect, under the clear provision', of the lease, of keeping the lease alive beyond the primary term.
I respectfully dissent.