MOISE, Justice.
 

 This is a suit instituted by plaintiff to cancel an oil, gas and mineral lease covering an
 
 *465
 
 80 acre tract of land in the Benton Gas Field of Bossier Parish, La., predicated on the alleged failure of the defendants to drill a well on the leased premises within the primary term of the lease. ■ The case was tried on an agreed statement of facts and from a judgment rejecting its demands, the plaintiff has appealed.
 

 On July 9, 1947, plaintiff filed the present suit, alleging in paragraph 3 thereof that “* * * the said lease was granted for a term of 3 years from December 15, 1943 * * ' * and as long thereafter as oil, gas o'r other minerals is produced from said land with which said land is pooled thereunder. Petitioner shows that no well was drilled on this property during the primary term of said lease nor was there any oil, gas or other mineral produced from land covering (ed) by said lease or land with which said land was pooled during the primary term thereof. Accordingly, petitioner shows that said lease has lapsed and is no longer in force or effect.” Plaintiff prays for the cancellation of the lease, for attorneys’ fees and for reservation of its right to sue for damages which it may have sustained on account of defendants’ refusal to release the aforesaid lease.
 

 The defendants answered setting forth that they were prevented from drilling on or producing from the property covered by the lease in question because of
 
 force majeure;
 
 that the land covered by the lease sought to be cancelled had been pooled with other land on April 23, 1946, which was during the primary term thereof, by Order 114 issued by the Commissioner of Conservation ; that because of said order, there was no violation of the agreement to drill a well on the leased premises during the primary term of the lease because said order prohibited them from drilling a well on the unit into which the leased premises had been incorporated; and, therefore, that the lease was not subject to cancellation but continued in force and effect by virtue of the continuous production from this unit from wells located on property other than that covered by the lease in question; and that tender had been made to plaintiff of certain payments in compliance with the provisions of the lease, and upon plaintiff’s refusal to accept these amounts they were deposited to its credit.
 

 The order was admitted by all parties to be proper.
 

 An examination of the provisions of the lease reveals that the
 
 “force majeure”
 
 clause plainly covers an order issued by the Commissioner of Conservation and provides under paragraph 12(b) that if lessee is prevented from drilling or producing any well by reason of
 
 force majeure,
 
 lessee would be relieved of all obligations to drill on the leased premises and the lease would not be subject to cancellation in such event. Paragraph 12(c) also provides that if after the expiration of the primary term and while the lease is in force, lessee could not maintain the same in effect because prevented by
 
 force majeure,
 
 then the lease would nev
 
 *467
 
 ertheless continue but lessee should pay to the owners, or to the credit of the owners in the depository bank, as royalty an amount equal to $1.00 per year for each acre retained thereunder during the period the lease was so continued in effect after the primary term.
 

 In support of their position, the defendants cite the recent case of Crichton v. Lee, 209 La. 561, 25 So.2d 229, as being identical and decisive of the issues in the instant case. In the cited case the tract covered by the lease had been placed in a drilling and production unit by the Conservation Commissioner’s order after execution of the lease but prior to the expiration of the primary term thereof and a producing well had been completed on other land in the unit and any additional well in the unit was prohibited. It was held there that the lease could not be cancelled on account of lessee’s failure to drill a well on the leased tract during the primary term thereof.
 

 The plaintiff argues that the Crichton case, supra, is not apposite because there the cycling plant was completed and in actual operation prior to the expiration of the primary term of the lease, while in the instant case the plant was not actually completed until after the date of the expiration of the primary term of the lease.
 

 The evidence shows that immediately after the issuance of Order No. 114 on April 23, 1946, the operators of the Benton Field commenced operations for the construction of the cycling plant and pressure maintenanee system; that the plant was completed and placed in operation on February 2, 1948, processing 4000 barrels of liquid hydrocarbons per day; that gas and liquid hydrocarbons were produced by the operator of the Benton Unit between April 23, 1946, the date of Order No. 114, and the date the plant was placed in operation, and used for the drilling of additional wells and other unit operations.
 

 In both the cited case and the instant one, the orders of the Commissioner were rendered during the time the leases were in effect, and in both cases construction was begun on the cycling plants immediately after the issuance of the orders — in the cited case the plant was completed before the expiration of the primary term of the lease, in the instant one, the plant was completed thereafter. Therefore, finding a strong similarity in the two cases and the defendant here not being at fault but having exercised due diligence, the legal factual result constitutes a distinction without a difference.
 

 It is our conclusion that plaintiff’s con- ' tention is untenable because the defendants in reality have not failed to perform any obligation of the contract. In other words, the defendants’ right to drill a well on the tract covered by the lease was in effect taken away from them by the Order of the Conservation Commissioner, with reservation, however, to them, as well as to the plaintiff, to share in the production from the unit in proportion to their ownership.
 

 
 *469
 
 The trial judge in his written opinion states:
 

 “During the construction of the cycling plant a small amount of gas and distillate was produced but no royalty was paid. However, the lessee owes plaintiff its part of this royalty but this issue is not sued for in this action.”
 

 We recognize plaintiff’s right to claim the above royalty payments but it is not necessary that we pass on an unpresented issue.
 

 For these reasons, the judgment appealed from is affirmed; plaintiff-appellant to pay all costs of court.