102 So.2d 223

## MONSANTO CHEMICAL COMPANY
### v.
## SOUTHERN NATURAL GAS COMPANY et al.

No. 43467.

April 21, 1958.

Thompson, Thompson & Sparks, Monroe, Morgan, Baker, Skeels, Middleton & Coleman, Shreveport, for defendants-appellants.

Blanchard, Goldstein, Walker & O'Quin, Shreveport, for plaintiff-appellee.

FOURNET, Chief Justice.

The plaintiff-appellee, formerly Lion Oil Company, now merged into Monsanto Chemical Company and continuing in that name, and defendants-appellants, Southern Natural Gas Company et al.,[1] as owners of oil and gas leases covering the whole of Section 31, T. 17 N., R. 5 W., Bienville Parish, which is a 640 acre unit in the Bear Creek gas field designated the N. A. Culbertson Unit No. 1, entered into agreements on December 6, 1947, and February 10, 1948, integrating their interests in this section "for the discovery and production of gas from any and all horizons, formations or zones." In the contract it is stipulated that "The leasehold estates consisting of said Section 31 * * * shall be owned, operated and developed as to all gas and distillate production from any one or more horizons, formations or zones, under the terms of this contract, for the joint benefit of Crow, Southern and Lion Oil Company, or their assigns, and all liability, costs and expenses incurred therewith shall be borne by Crow in the proportion of 18.75 per cent, by Southern in the proportion of 70.10 per cent, and by Lion in the proportion of 11.15 per cent, and they shall severally own the working interest in the gas distillate that may be produced from the premises covered by this agreement." It is further stipulated that "this agreement is to remain in full force and effect so long as said Section 31 * * * constitutes a unit for the development and production of gas from any horizon, formation or zone, whether under the terms of pooling and unitization agreements, or orders of the Department of Conservation of the State of Louisiana covering said unit, or any extension or renewal thereof, by production or otherwise." In accordance with the agreement a well was drilled and completed in the Hosston formation of the unit. It is still a commercial producer.

Subsequently, in March of 1955, the Conservation Commissioner issued Order No. 78-F by which 126.4 acres were severed from the southern part of the Culbertson unit in Section 31 and, for the purpose of developing the Pettit formation of the Bear Creek Field, added to a 640 acre unit designated as the Hodge-Hunt Pettit Production Unit No. C-1 that, up until then, had comprised only Section 6 of T. 16 N., R. 5 W. The area thus severed is not affected by any of plaintiff's leases that were

1. The other defendants are L. M. Crow, David Crow, and W. C. O'Ferrall. At the time the integration agreements of 1947 and 1948 were entered into, this interest was owned by R. W. Crow, Trustee.

pooled in the 1947 and 1948 agreements, but is covered by the leases held by defendants.

Pursuant to the 1947 and 1948 agreements above referred to, Southern Natural Gas Company, as the operator of the Hodge-Hunt unit, is withholding from the proceeds realized in the sale of the production from the well brought in in the Pettit formation of this unit, which well is located in Section 6, that portion allocated under the Commissioner's order to the 126.4 acres severed from Section 31. The plaintiff, availing itself of the provisions of Louisiana's Uniform Declaratory Judgments Act (R.S. 13:-4231–4246) instituted this suit to secure a judgment declaring it to be entitled to its proportionate share, under the 1947 and 1948 agreements, of the amounts thus realized from the Hodge-Hunt unit well that are attributable to this acreage in Section 31. The defendants prosecute this appeal from such a judgment.

Defendants contend, first, that the suit cannot be maintained as the plaintiff does not question the legality of Order No. 78-F and has not exhausted the administrative remedy afforded it under the provisions of R.S. 30:12,[2] and, second, that the operating agreements on which plaintiff places reliance are inconsistent with, and therefore superseded by, this order in so far as it has reference to the development of the Pettit formation underlying the 126.4 acre tract.

■■ The trial judge, in an able and well-considered opinion, answers both of these contentions adversely to the cause of the defendants, and, we think, correctly so, as demonstrated by his reasons for judgment, from which we quote the following pertinent observations:

"We do not understand that this suit is an attack on Order No. 78-F in any respect. Plaintiff, through its counsel, disavows any such intention. As we construe the plaintiff's contention in this case, it is merely asking for a judicial declaration of its contractual rights contained in the conventional agreements made between it, Southern, and Crow, and particularly the specific portions thereof hereinabove quoted.[3] A judicial determination of these rights in this case will have no effect whatever upon the order. * * * All that plaintiff in the case at bar is asking is that the court declare whether or not it has any interest, under its conventional agreements with Southern and Crow, in that portion of the production

2. This contention is the basis of exceptions of no cause and no right of action. R.S. 30:12 reads in part as follows: "An interested person adversely affected by any * * * order made by the commissioner hereunder, * * * and who has exhausted his administrative remedy, may obtain court review and seek relief by a suit for an injunction against the commissioner as defendant. * * * *"

3. The same provisions from the contracts referred to by the judge have been quoted above in this opinion.

from the Pettit well in the Hodge-Hunt unit in Section 6 which the Commissioner's order allocates to that 126.4 acres in Section 31. In other words, plaintiff is not attacking the Commisssioner's order. It is, rather, affirming it and asserting rights under its conventional agreements, which the Commissioner's order did not affect nor intend to affect. As we see it, plaintiff's position in this case on this precise point is identical with the position of the defendants in the case of Arkansas-Louisiana Gas Company v. Southwest Natural Production Company, 221 La. 608, 60 So.2d 9. The Supreme Court * * * there stated that contention to be that the unitization of several tracts under lease, pursuant to valid orders of the Commissioner, has no other effect than to allocate to each tract its pro rata share of the production from the entire unit, based on the proportion the acres contained in the individual tract bears to the total number of acres in the unit. The Supreme Court sustained this contention as valid and correct. So does the plaintiff in the case at bar accept the Commissioner's order in this case as valid and as having the effect of allocating to the 126.4 acres in Section 31 a certain portion of production. It would be beyond the function and powers of the Commissioner to say whether or not alleged contractual rights under the conventional agreements between Lion, Southern, and Crow with respect to their leasehold rights were recast and affected by the order. That is clearly a function of the courts."

On the merits the trial judge, continuing, says: "We agree with plaintiff's counsel that in light of this statutory provision [4] the effect of Order No. 78-F is that that part of the production from the Hodge-Hunt unit allocated to the 126.4 acre tract in Section 31 is considered as if it had been produced by a well drilled thereon. This being true, what had the parties agreed between themselves with respect thereto? We have quoted in the early part of this opinion the pertinent provisions of the agreements between Lion, Southern, and Crow.[5] All of the parties to this suit agree that these are the pertinent provisions to be interpreted. And we must interpret them according to their terms, since no evidence was introduced on either side, and none offered, to explain them or the intention of the parties in so expressing themselves. Indeed, we must assume that all parties to this proceeding take the position that there is no ambiguity in the language and the defendants do not contend for a different construction than that contended for by the plaintiff in this case. Plaintiff's contention is that as a result of its agreements with

4. R.S. 30:10A(1) (b) provides: "The portion of the production allocated to the owner of each tract included in a drilling unit formed by a pooling order shall, when produced be considered as if it had been produced from his tract by a well drilled thereon."

5. See Footnote No. 3, supra.

Southern and Crow the three became joint owners of the three leasehold estates theretofore separately owned by them, consisting of the whole of Section 31 as to all gas and distillate production from any one or more horizons, formations, or zones. With this we agree.

" * * * We have already quoted hereinbefore a portion of the Supreme Court's observations in Arkansas Louisiana Gas Company v. Southwest Natural Production Company, supra, to the effect that such an order as the Commissioner's here has no other effect than to allocate to each tract its pro rata share of the production from the entire unit. Further on in the Supreme Court's decision in that case it said that the Commissioner's order in that case establishing 640-acre drilling units, 'did not intend to, and did not, in fact, abrogate the contracts between the several lessors and their respective lessees with respect to the nature or structure of their mineral ownership, or alter in any way the consideration to be paid and the method of payment.'

\* \* \* \* \* \*

"We see nothing unusual in Lion, Southern, and Crow, they being owners of the leasehold rights on all of the lands within Section 31, and those lands having already been unitized into a production unit, contracting between themselves to merge and integrate their respective leasehold estates and to become joint owners of the merged estate so long as their contract should subsist, namely, so long as Section 31 constituted a unit for the development of gas from *any* horizon, formation or zone. And the parties then precisely agreed that their leasehold estates should thereafter be *owned,* operated and developed as to all gas and distillate production from *any one or more* horizons, formations, or zones.

\* \* \* \* \* \*

"As we construe the agreements between Lion, Southern and Crow, each became a joint owner in all three of the leasehold contracts, as merged and integrated, so long as Section 31 is a production unit for the production of gas from *any* horizon. And it is presently a production unit from the well drilled in and producing from the Hosston horizon in that section.

"We think plaintiff is entitled to its part of the production from the Hodge-Hunt Unit Pettit well in Section 6 allocated to the 126.4 acre tract in Section 31, as set forth in the conventional agreements between Lion, Southern, and Crow, being Exhibits B and B-1. \* \* \*"

We have carefully noted the cases [6] cited by defendants in support of their contention

---

6. Hood v. Southern Production Co., 206 La. 642, 19 So.2d 336; Hardy v. Union Producing Co., 207 La. 137, 20 So.2d 734; Alston v. Southern Production Co., 207 La. 370, 21 So.2d 383; Hunter Co. v. Shell Oil Co., 211 La. 893, 31 So.2d 10; Hunter Co. v. Vaughn, 217 La. 459, 46 So.2d 735; Everett v. Phillips Petroleum Co., 218 La. 835, 51 So.2d 87; and Delatte v. Woods, 232 La. 341, 94 So.2d 281

and we think the following comment from Arkansas Louisiana Gas Company v. Southwest Natural Production Company, supra, quoted by the learned trial judge in the instant case, clearly shows they are not only inapposite but support the conclusions we have reached [221 La. 608, 60 So.2d 10]: "While it is true that certain language in the cases above cited would seem to lend support to the plaintiff's theory, an examination of these opinions discloses they involved the effect of unitization orders on the contractual rights of the lessor and lessee only in so far as the division, use, or development of the mineral servitude created was concerned, and that the effect of such orders on the structure of the mineral ownership, as such, or, more specifically, on the contractual rights of the parties with respect to the royalty due and the proper method of computing and paying it, was never at issue. They are not, therefore, controlling. *In fact, they are authority for the proposition that private contractual rights in these leases are only superseded when they are in conflict with the valid orders of the Commissioner of Conservation, i. e., when the order is a conservation measure, pure and simple.* \* \* \*" (The emphasis was supplied by the trial judge in his opinion.)

For the reasons assigned, the judgment appealed from is affirmed.

102 So.2d 227