FOURNET, Chief Justice
(dissenting).
With all due respect to the action of the majority in refusing to exercise its supervisory jurisdiction to review the judgment of the Court of Appeal for the Third Circuit in the above entitled matter, affecting, as it does, important property rights in this state, I must say that it is, in my opinion, clearly erroneous, for it holds the decisions of this court in Childs v. Washington, 229 La. 869, 87 So.2d 111, and Jumonville Pipe & Machinery Company v. Federal Land Bank, 230 La. 41, 87 So.2d 721 (the former written by me), both involving mineral servitudes, are controlling in the instant case, which involves land — a portion of *845 which is included in a forced conservation pooling unit — that is impressed with a royalty interest only.
The error in the decision lies in the fact that the court overlooked our important jurisprudence, which is to the effect that private contracts involving mineral rights are only superseded when they are in conflict with the valid orders of the Commissioner of Conservation, i. e., when the order is a conservation measure, pure and simple. Everett v. Phillips Petroleum Company, 218 La. 835, 51 So.2d 87; Arkansas Louisiana Gas Company v. Southwest Natural Production Company, 221 La. 608, 60 So.2d 9, and Monsanto Chemical Company v. Southern Natural Gas Company, 234 La. 939, 102 So.2d 223.
In the Arkansas Louisiana Gas Company case, it was pointed out that in order to properly protect the public interest, “The Department of Conservation was created by the Constitution of 1921 for the sole purpose of protecting, conserving, and replenishing the natural resources of this state, and the authority of the legislature to enact, and of the Commissioners of Conservation to enforce, is specifically limited to those measures that do ‘protect, conserve and replenish the natural resources of the State, and * * * prohibit and prevent the vaaste or any wasteful use thereof.’ Section 1 of Article VI of the Constitution of 1921, as amended, Act No. 328 of 1944, approved November 7,1944. Pursuant to this authority, the legislature enacted Act No. 157 of 1940, R.S. 30:2 et seq., a comprehensive conservation statute, giving the Commissioner the authority, among other things, to prohibit the waste of oil and gas and to avoid the drilling of unnecessary wells by integrating into drilling units the maximum area he finds, as a fact, one well can efficiently and economically drain, Section 8(b) now R.S. 30:9, subd. B * * See, also, Le Blanc v. Danciger Oil & Refining Company, 218 La. 463, 49 So.2d 855; Smith v. Holt, 223 La. 821, 67 So.2d 93, and Childs v. Washington, 229 La. 869, 87 So.2d 111. (The emphasis has been supplied.)
And while, as pointed out in Le Blanc v. Danciger Oil & Refining Company, supra, all contracts with respect to the development and production of minerals in this state must, of necessity, be subject to the police power exercised in protecting these natural resources, and that any provisions in our law with respect thereto form a part of these contracts the same as though written therein (See, also, Sohio Petroleum Company v. V. S. & P. R. R., 222 La. 383, 62 So.2d 615, and Childs v. Washington, 229 La. 869, 87 So.2d 111), such orders do not and cannot in fact abrogate such contracts wiph respect to the nature and/or structure of their mineral ownership, or alter in any way the consideration to be paid and the method of payment. Arkansas Louisiana Gas Company v. Southwest Na *847 tural Production Company, 221 La. 608, 60 So.2d 9; Monsanto Chemical Company v. Southern Natural Gas Company, 234 La. 939, 102 So.2d 223, and the authorities cited therein.
Clearly, in the instant case there can be no possible relationship between the order of the Commissioner intended as a conservation measure onfy — that is, that the minerals underlying the property included therein would be efficiently and economically drained — and the contractual rights between the owner of the land and the purchaser of a royalty interest in the production from that land. The right of such purchaser, unlike that of the owner of a servitude, as was true in Childs v. Washington, 229 La. 869, 87 So.2d 111 — to go upon the land and produce the minerals, which action is, unquestionably, within the right and duty of the Commissioner to control for the proper use and preservation of these minerals- — ■ is limited to receiving the proportionate share of the production secured from the property that is impressed with his royalty interest that is allocable to such interest if and when such production is actually realized. In fact, the royalty owner is not even a necessary party to, nor entitled to notice from the Commissioner with respect to, any hearings or proceedings held with respect to the formation, of a unit in which all or part of the land impressed with his royalty interest is to be included, for, as pointed out in Smith v. Holt, 223 La. 821, 67 So.2d 93, it is only when owners of separately owned tracts fail to agree to pool their interest for the formation of a drilling unit that the Commissioner is authorized, if it is “found by him to be necessary for the prevention of waste or to avoid the drilling of unnecessary wells,” to step in and require “such owners” to “develop their lands as a drilling unit,” and the word “owner" as thus used, is defined to be “the person zvho has the right to drill into and to produce from a pool and to appropriate the production either for himself or for others.” R.S. 30:3(8). Arkansas Louisiana Gas Company v. Southwest Natural Production Company, 221 La. 608, 60 So.2d 9. (The emphasis has been supplied.)
It necessarily follows that if the purchaser and holder of a royalty interest is without right to drill in or produce from a pool under lands affected by his royalty interest, either for himself or others, he is not an owner within the meaning and contemplation of the act, and, therefore, the orders of the Commissioner could have no effect whatsoever on his rights under the contract whereby he acquired this royalty interest. To extend the effect of the Commissioner’s orders, as has been done in the instant case, is illegal and unconstitutional, being in violation of Section 15 of Article IV of the Constitution of Louisiana and of Section 10 of Article I of the Constitution of the United States, forbidding the impairment of the obliga *849 tion of contracts for purposes other than public interest and public utility.