SAVOY, Judge.
This action was instituted by plaintiffs against defendants seeking a declaratory judgment wherein they wish to be decreed the owners of 22i/£/40 of all oil produced from two producing wells drilled and completed by Crow Drilling & Producing Company for the benefit of the parties in accordance with two written agreements between the parties dated October 4 and October 17, 1963.
On October 4, 1963, David Crow, on behalf of Crow Drilling & Producing Company, Inc., entered into a written agreement with H. L. Hunt in connection with the drilling of a well upon which plaintiffs and defendants had subleases on certain real estate in the Parishes of Rapides and La-Salle, Louisiana.
The agreement which forms the basis of this lawsuit is designated as P — 11, and is copied herein in its entirety:
“October 4, 1963
“Mr. H. L. Hunt 1704 Main Street Dallas, Texas
“Re: Crow — Gulf Coast Venture Eota — La. Delta No. 1
“Dear Sir:
“We are writing this letter in the nature of an agreement for the drilling of our jointly owned well located in the NW/4 of the NE/4 of Section 26, T 5 N, R 3 E, Rapides Parish, Louisiana.
“It is agreed that there is presently some difficulty in arriving at the exact amount of acreage in each lease necessary to pool and comprise this 40 acre unit, and therefore, in order to fix the amount of participation for each lease owner, it is hereby agreed that H. L. Hunt will participate in the drilling of this well to the extent of 17}4/40ths of the working interest and the Crow— Gulf Coast interest will participate to the extent of 22i4/40ths in the cost of drilling this well. In the event subsequent information, except the failure of individual titles to leases, should reveal that any party has less interest than the above, it is still hereby agreed that the ownership would be the same and the participation and the expenses would be the same as the percentage outlined above.
“It is also agreed that if the drilling of this well results in a producer that the parties will enter into a joint operating agreement on the familiar Ross- *130 Martin form with the changes as suggested by Hunt regarding individual parties and also with the use of Hunt’s figures on the accounting procedure for overhead items.
“It is also agreed that Crow Drilling & Producing Co. will drill this well under a regular contract for the area at the prevailing price of $2.90 per foot, which includes an amount not to exceed $500.00 for road and location, and includes surface pipe and cement for surface, artificial mud, IES electric log and 24 sidewalls samples and otherwise turnkey this job to point where decision to set pipe is made. For all other work and any completion work, it is agreed that Crow will furnish their rig at a day rate of $650.00 per 24 hour day when drill pipe is in use and $600.00 per 24 hour day when drill pipe is not in use.
“We believe this properly outlines our agreement and if satisfactory with you, please sign in the space provided below and return two copies of this letter to our office.
“Yours very truly,
“CROW DRILLING & PRODUCING CO.
“By: s/ David Crow_ “David Crow
“Accepted this 16th day of October, 1963
“By: s/ George Cunyus, Agent
“H. L. Hunt by George Cunyus, Agent.”
After the completion of the first oil well on the leased property mentioned above, Crow Drilling commenced the drilling of a second well on the above-mentioned leases, and the same parties entered into a second agreement on October 17, 1963. This agreement refers to the agreement of October 4, 1963, and is copied herein in its entirety:
“October 17, 1963
“Mr. H. L. Hunt 1704 Main Street Dallas, Texas
“Re: Crow — Gulf Coast Venture Eota — La. Delta No. 2
“Dear Sir:
“We are writing this letter in the nature of an agreement for the drilling of our jointly owned well located in the NE/4 of the NE/4 of Section 26, T 5 N, R 3 E, LaSalle Parish, Louisiana.
“We recently entered into an agreement for the drilling of the Eota-La. Delta No. 1 in which we agreed to share the expenses of drilling this well in the proportions of 17J/Ü/40 for Hunt and 221,4/40 for Crow-Gulf Coast Venture, regardless of the actual ownership of these tracts.
*131 “We hereby agree that we will drill this well under the same terms and conditions as the Eota-La. Delta No. 1 and are enclosing an operating agreement covering the operations of both of these wells.
“If it is satisfactory with you to drill the Eota-La. Delta No. 2 under the same terms and conditions as the Eota-La. Delta No. 1, please sign in the space provided below and return two copies of this letter to our office.
“Yours very truly,
“CROW DRILLING & PRODUCING CO.
“By: s/ David Crow_
“David Crow
“Accepted this 28th day of October, 1963
“H. L. Hunt
“By: s/ George Cunyus, Agent “George Cunyus, Agent.”
Following the completion of the two wells, the H. L. Hunt interest was assigned to one of his enterprises, namely, Reliance Trusts, B. B. Barber, Trustee.
The purchaser of the oil from the two wells was Placid Oil Company, a Hunt controlled company.
Placid refused to pay to plaintiffs any funds from the oil runs on the wells in controversy for the reason that their attorney, upon examination of title to the leased property, found that plaintiffs had a 16.1/40 interest in Well No. 1, and no interest in Well No. 2.
Prior to filing answer to plaintiffs’ petition, defendants filed many pleadings, all of which were overruled with the exception that plaintiffs were ordered to amend their petition to show the manner in which they acquired their leasehold interest.
In their answer, defendants took the position that the agreements of October 4 and October 17, 1963, were superseded by the operating agreement dated October 17, 1963 (marked as Exhibit C), and that said agreement provides that should there be a failure of title, the party without title to a portion of the property mentioned in the agreement shall have his working interest reduced proportionately. Alternatively, defendants contend that the operating agreement was superseded by a unit formed from a portion of the leased property by virtue of an order of the Commissioner of Conservation of this State dated May 1, 1964.
After a trial on the merits, the district judge held that there was no failure of title in plaintiffs, and that they owned a 22.5/40 interest in both wells.
Upon application of defendants, the trial judge granted a new trial, and after a hearing on the new trial, he reversed himself and held that plaintiffs’ title failed as to a portion of the land which they had' placed in the agreement with defendants, and decreed them to be- the owners of 16.1/40 interest in Well No. 1 and held they had no interest in Well No. 2. He allowed plaintiffs to recover their proportionate part of the drilling costs in both wells. Plaintiffs appealed to this Court.
*132 After reading the letter agreement between the parties dated October 4, 1963, and the one dated October 17, 1963, in connection with the operating agreement, we are of the opinion that plaintiffs are entitled to be decreed the owners of a 22)4/40 interest in both wells under the respective leases owned by both parties.
The operating agreement executed by the parties on October 17, 1963, dispensed with the examination of title to the property in the leases involved in the instant case.
The trial judge, after granting defendants a new trial, reversed his original holding in favor of plaintiffs and decided the case in favor of defendants for the reason that he found there was a failure of title in plaintiffs because the original owners of the fee wherein plaintiffs acquired their lease rights did not own the amount of acreage called for in said leases, and that there was a partial failure of title; and accordingly, plaintiffs’ lease interest in the land upon which the wells were producing from should be reduced proportionately.
The lease owned by plaintiffs was described as the NW J4, E Yz of SW }4, NE 14 south of Saline Bayou.
The leases acquired by defendants were described as “All of the NE 14 north and east of Saline Bayou in Section 26, Township S North, Range 3 East.”
It is our opinion that the provisions relating to failure of title in the operating agreement of October 17, 1963, and in the two written agreements between the parties dated October 4 and 17, 1963, apply only if it should 'be determined that a party to those agreements had not actually acquired a valid title to the lease allegedly owned by him, regardless of the number of acres affected by that lease, or if the original lessors did not have title to any of the property described in that lease. There was no such showing made by defendants. We are fortified in this view by the following portion of the October 4, 1963 agreement, which states:
“ * * * In the event subsequent information, except the failure of individual titles to leases, should reveal that any party has less interest than the above, it is still hereby agreed that the ownership would be the same and the participation and the expenses would be the same as the percentage outlined above.”
Our conclusions in this respect are further supported by the fact that the second letter agreement stipulating that the “ownership” in both wells would be the same as that set out in the first agreement of October 4, 1963, was signed on the same date as was the operating agreement, that is on October 17, 1963. The operating agreement provides that plaintiffs own a .526250 interest or 22)4/40 interest in both wells; and that defendants own .43750 or 17)4/40 interest in said wells. The above interests are the same as set forth in the contracts of October 4 and 17, 1963.
We find the alternative allegation in defendants’ answer that the conservation order of May 1, 1964, superseded the operating agreement of October 17, 1963, is without merit.
In Monsanto Chemical Company v. Southern Natural Gas Company, 234 La. 939, 102 So.2d 223 (1958), and in Southwest Gas Producing Company v. Creslenn Oil Company (La.App., 2 Cir., 1965), 181 So.2d 63, writ refused, the Supreme Court and Court of Appeal held that the parties to an operating agreement agreed to freeze their interests, and the agreed distribution of production in an operating agreement is not altered by a subsequent conservation order.
For the written reasons assigned, the judgment of the district court is reversed *133 insofar as it decrees plaintiffs to be the owners of 16.1/40 interest in Well No. 1 and having no interest in Well No. 2; and judgment is hereby rendered in favor of plaintiffs, James M. Forgotson and Crow Drilling & Producing Company, Inc., (as succeeded by and for which John Shuey, agent, was substituted during the course of this proceeding) and against B. B. Barber, as Trustee of Reliance Trusts, (being substituted as a party defendant for H. L. Hunt) decreeing the said plaintiffs to be the owners of a 22J4/40 interest (13/16 to James M. Forgotson and 3/16 to John Shuey, agent) in and to all of the oil and gas produced and to be produced from Crow-Gulf Coast Venture-Eota-La. Delta No. 1 Well and Crow-Gulf Coast Venture-Eota-La. Delta No. 2 Well, situated, respectively, upon the Northwest Quarter of the Northeast Quarter, and Northeast Quarter of the Northeast Quarter of Section 26, Township 5 North, Range 3 East, Rapides and LaSalle Parishes, Louisiana.
Said property above is also described in the following sublease agreements affecting same:
1. Sublease agreement stated to have been executed on June 8, 1964, effective on October 9, 1963, from Union Producing Company and M. H. Marr to Crow Drilling & Producing Company, Inc. and James M. Forgotson, recorded in Book 643, page 70, of the Records of Rapides Parish, Louisiana ; and
2. Sublease from Hunt Oil Company to H. L. Hunt, dated October 3, 1963, recorded in Book 25, Folio 195, of Oil and Gas Lease Records of LaSalle Parish, Louisiana.
Defendants to pay all costs incurred in the district court and on appeal.
Affirmed in part, reversed in part and rendered.