306 So.2d 731 (1975)
UNITED GAS PIPE LINE COMPANY
v.
WATSON OIL CORPORATION.
No. 55575.
Supreme Court of Louisiana.
January 20, 1975.
*732 John T. Guyton, Thomas J. Wyatt, Hargrove, Guyton, Ramey & Barlow, Shreveport, for plaintiff-relator.
R. T. Jorden, Kerry M. Massari, Liskow & Lewis, Lafayette, for defendant-respondent.
CALOGERO, Justice.
We granted writs in this case 303 So.2d 172 (La.1974), to determine whether the District Court erred in dissolving a temporary restraining order earlier granted plaintiff, and dismissing plaintiff's suit without prejudice for lack of jurisdiction. The Court of Appeal, finding no error in the trial court's action, had refused plaintiff's application for writs. (La.App.2d Cir. 1974).
The relevant facts, the substance of the legal controversy and the procedural history in these proceedings follows.
Pursuant to R.S. 30:22 (Sec. 1 of Act 190 of 1962) United Gas Pipeline Co. (hereinafter referred to as United) applied to the State of Louisiana Department of Conservation for authority to use as an underground reservoir for the storage of natural gas, the Pettit Formation in the Lake Bistineau Field, Bienville and Bossier Parishes, Louisiana. Their application further sought of the Department of Conservation the establishment of basic rules and regulations governing the storage, injection and withdrawal of gas from the Formation.
Upon compliance with the statute and after a public hearing the Commissioner of Conservation issued an order, #287-B, dated October 25, 1965, incorporating the findings required by the statute, and granting the authority requested.
The Pettit Formation in the Lake Bistineau Field (the storage area) is a stratum *733 or formation occurring between a depth of 5,030 feet and a depth of 5,430 feet below ground.
One provision of the order set forth that for wells that should be drilled through the Pettit Formation to deeper formations the casing program should include setting a stage cementing tool in the casing string so as to create a cement bond from a point 200 feet below the base of the Pettit Formation to a point at least 500 feet above the top of the Pettit Formation.[1]
Thereafter, on December 3, 1965 United Gas Pipeline Co. entered into two storage agreements with International Paper Co. and the Long Bell Petroleum Co. in which United, for a stipulated consideration, obtained the right to store natural gas in the portion of the reservoir located beneath the land owned by these two companies.[2]
Each of these agreements, duly recorded in Bienville Parish on December 14, 1965, contained the following provision:
"Grantors agree that if they should drill, or cause or allow to be drilled under any future lease or grant, a well on the above described land, they will use or cause to be used in the drilling of such well all reasonable efforts required to protect the Storage Reservoir against damage and against loss of gas stored therein. Grantors further agree that they will not complete or cause or allow to be completed in the Storage Reservoir any well other than a well or wells drilled by Grantee hereunder." (Emphasis provided)
Neither the Commissioner's order relative to casing requirements for wells drilled through the storage area, nor the parties' contractual requirement relative to drilling through the storage area apparently took on any significance until March 22, 1974 when International Paper Company and Long Bell Petroleum Company executed a mineral lease in favor of Jack T. Everett granting the right to explore for minerals, on land owned by International and Long Bell, located below the storage reservoir in question. Watson Oil Corp. (which presumably had acquired an interest in the lease from or through Jack T. Everett) secured a Drilling Permit and commenced preparation to drill to a point below the storage reservoir.
Upon becoming aware of these preparations United filed this suit in the Second Judicial District Court for the Parish of Bienville seeking a temporary restraining order, and a preliminary and permanent injunction in due course, prohibiting Watson *734 from drilling without first setting an intermediate or protective string of casing through the reservoir.[3]
United's petition claimed that this was required by the provisions of the Gas Storage Agreement because "setting of such a protective string of casing through the Storage Reservoir is a reasonable effort which is required to protect the Storage Reservoir against damage and against loss of gas stored therein."[4]
The temporary restraining order was dissolved and dismissed following an informal conference with the attorneys for the parties and the suit dismissed without prejudice "for lack of jurisdiction." As earlier mentioned United's application to the Court of Appeal for supervisory relief was rejected. Upon United's application to this Court we granted a writ of certiorari, ordered reinstated the temporary restraining order earlier issued and directed the Clerk, Second Circuit Court of Appeal to transmit the record in duplicate to this Court.
The lower courts summarily dismissed plaintiff's suit on the basis that the district court was without jurisdiction to consider the case, apparently agreeing with defendant Watson's contention that United's effort to require the intermediate string of casing was a collateral attack on order #287-B (which mandated no such requirement). Watson relies upon R.S. 30:12[5] and Breaux v. Apache Oil Corporation, 240 So.2d 589 (La.App.3rd Cir. 1970); Vincent v. Hunt, 221 So.2d 577 (La.App. 3rd Cir. 1969); Guarisco v. Trahan, 173 So.2d 304 (La.App.1st Cir. 1965) and Mire v. Hawkins, 147 So.2d 892 (La.App.3rd Cir. 1962) for the proposition that any suit attacking, directly or collaterally, an order of the Commissioner, as this suit is alleged to do, must be brought at the domicile of the Commissioner (Parish of East Baton Rouge) as the venue provided in the statute is akin to the non-waivable venue provided in C.C.P. Art. 44, and consequently "jurisdictional" in nature.
United contends, however, that they are not either directly or collaterally attacking the Commissioner's order, asserting that they "assume without question the validity of Order #287-B." Rather they contend that they are simply seeking to enforce their rights under, and the obligations imposed upon Watson by, the storage agreements executed December 3, 1965 (and duly recorded thereafter) following the October 25, 1965 order of the Commissioner, that a proper forum for their lawsuit is the Parish in which the property is located, and that the presence of the Commissioner of Conservation in the suit is neither necessary nor indispensable.
*735 United's contention is that the Gas Storage Agreements' "all reasonable efforts required to protect the storage reservoir" requires an intermediate string of casing in addition to the cement bond required by order #287-B for any drilling through the Reservoir.
Watson cites Alston v. Southern Production Co., 207 La. 370, 21 So.2d 383 (1945); Hardy v. Union Producing Co., 207 La. 137, 20 So.2d 734 (1945); Placid Oil Co. v. North Central Texas Oil Co., 206 La. 693, 19 So.2d 616 (1944); Hunter Co. v. McHugh, 202 La. 97, 11 So.2d 495 (1942); Childs v. Washington, 229 La. 869, 87 So. 2d 111 (1956); Hunter Co. v. Vaughn, 217 La. 459, 46 So.2d 735 (1950), and Crichton v. Lee, 209 La. 561, 25 So.2d 229 (1946), for the proposition that private contractual rights are superseded when in conflict with a valid order of the Commissoner.
This Court in Arkansas Louisiana Gas Company v. Southern Natural Production Company, 221 La. 608, 60 So.2d 9 (1952) agreed with the foregoing principle, but, found in the matter then under consideration, no conflict with a valid order of the Commissioner of Conservation.
Similarly we must here find a conflict before applying the cited principle.
Both parties to this litigation cite and rely upon Monsanto Chemical Company v. Southern Natural Gas Company, 234 La. 939, 102 So.2d 223 (1958). In that case, the plaintiff and defendants separately owned oil and gas leases which together covered a section consisting of 640 acres. On December 6, 1947 and February 16, 1948 the parties entered into pooling agreements integrating their interests in the section by which the plaintiff was to receive 11.15% of the working interest in the section and the defendants 88.85%. Subsequently, the Commissioner issued an order placing 126.4 acres covered by the defendants' leases into a separate unit upon which production was established. The plaintiff sued to establish its rights to share 11.15% of the production attributed by virtue of the Commissioner's unit to the 126.4 acres under lease to the defendants.
In Monsanto we found no conflict between the agreements and the order of the Commissioner. That order, creating the unit, had the effect of allocating to the 126.4 acres a certain portion of unit production. The 1947 and 1948 agreements then controlled the distribution between plaintiff and defendants of the aforementioned portion of production.
The court concluded:
"It would be beyond the function and powers of the Commissioner to say whether or not alleged contractual rights under the conventional agreements between Lion, Southern, and Crow with respect to their leasehold rights were recast and affected by the order [of the Commissioner]. That is clearly a function of the Courts." 102 So.2d at 225 (Emphasis added).
While the Monsanto case is not one precisely on point, it is a case in which it was concluded that contractual rights not contrary to or inconsistent with the Commissioner's order were properly subject to judicial review in litigation between the contracting parties.
There can be no doubt that order #287-B is a conservation measure. The difficulty lies in determining if United's demand for intermediate casing is an attack on that order. None of the cases cited by the parties are dispositive of the issue in this case. The case closest on point is Guarisco v. Trahan, 173 So.2d 304 (La. App.1st Cir. 1965) where the plaintiff was attempting to force the defendant to conduct a second directional survey after the Commissioner had determined not to order such survey. The Court of Appeal concluded that the plaintiff's remedy was to sue the Commissioner under R.S. 30:12 in the effort to have the directional survey ordered. In that case the plaintiff had no contractual right upon which to assert the claim made, unlike this case where United's *736 demand for intermediate casing is grounded upon the recorded Gas Storage Agreements.
R.S. 30:12 requiring suit in the district court of the Parish in which the principal office of the Commission is located, is a statute providing for judicial review of orders of the Commissioner. This case is not one for review of an order of the Commissioner, nor is it, from a review of the pleadings alone and without evidence having been taken, an attack on an order of the Commissioner. The mere fact that United's demand for intermediate casing is something the Commissioner could validly have ordered does not preclude the parties' agreeing to the requirement. The Commissioner's order would supersede such a contract only if there is a conflict. We find no such conflict evident upon a simple review of the pleadings. We limit the exclusive venue of R.S. 30:12 to those cases where the substance of the Commissioner's order is attacked, directly or collaterally. The contractual requirement to be impermissible must be offensive to the order, considering the order's intended purpose. Mere supplemental requirements may be provided for by contract.
It may well be that after hearing evidence and interpreting the Gas Storage Agreement provisions and the law in conjunction with that evidence, the trial court might conclude that "all reasonable efforts required" does not impose upon Watson the obligation to run an intermediate string of casing or to do anything more than what is dictated by order #287-B. The trial judge might conclude that the parties to the agreement intended no more than the necessary orders, rules and regulations which the Commissioner is legislatively mandated to determine.[6] In that event dismissal of plaintiff's suit would be in order on the merits.
It may be, that after hearing evidence, the trial court will interpret the provisions of the Gas Storage Agreements as United contends they should be interpreted, i. e., to require an intermediate string of casing, and then find this "supplemental" measure at variance with or technologically compromising to the Commissioner's ordered measure, viz. cement bond. In that event, plaintiff's suit shall have been determined to be an attack on the Commissioner's order and the trial court in Bienville Parish would then be correct in dismissing plaintiff's suit.
United, however, is entitled to have its day in court. In the event the trial court makes the determination that the intermediate casing was bargained for and acquired by United upon execution of the Gas Storage Agreements, that such a measure is not at variance with, or technologically compromising to, the Commissioner's ordered cement bond, then the plaintiff shall have proved the merit of their claim and defendant's protest shall have been without merit.
We hold that plaintiff's suit to enforce contractual rights against Watson does lie in the Parish of Bienville and that dismissal, at this stage of the litigation at any rate, was incorrect.
Accordingly, the judgment of the district court, dissolving the temporary restraining order and dismissing plaintiff's suit without prejudice for lack of jurisdiction, is reversed. The writ heretofore issued by this Court is made absolute. The temporary restraining order heretofore reinstated by this Court is ordered maintained in force and effect until a determination, in the district *737 court on remand, on the rule for preliminary injunction, is made, all in accordance with law. Hearing on the preliminary injunction is ordered at the earliest practicable time.
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
The majority finds no conflict between the conservation order and the contractual provision. I agree. This is a collateral attack on the conservation order, and R.S. 30:12 places "jurisdictional" venue in East Baton Rouge Parish.
NOTES
[1] The pertinent portion of the order, Paragraph 5, reads as follow:

"5. The casing program for all wells drilled in the proposed storage area shall be in accordance with the provisions of Statewide Order No. 29-B dated July 19, 1943, and any amendments or revisions thereto with the following exception: Section V, Paragraph D, Sub-Paragraph 4 should be revised to add: For wells drilled through the Pettit Formation to deeper formations a stage cementing tool shall be set in the casing string which is set through the Pettit Formation. The stage cementing tool shall be set at a depth of 200 feet below the base of the Pettit Formation and cemented with sufficient volume to bring the top of the cement at least 500 feet above the top of the Pettit Formation. The cement bond through the Pettit Formation should be evaluated by running a cement bond log survey. If the cement bond log does not indicate an effective seal, the operator should perform remedial block squeeze and evaluate by cement bond log survey and continue this until seal has been effected. Sub-Paragraph 1 of Paragraph E of Section V of Order No. 29-B shall not apply."
As we understand it, the cement when set encircles the casing, separating the casing and the surrounding earth, the purpose being to seal off the surrounding earth, and within the storage reservoir to prevent the escape of natural gas.
[2] Presumably plaintiff had earlier obtained from the two companies options to acquire agreements or sub-leases, for R.S. 30:22B(1) required that at least ¾ths of the owners in interest consent in writing and the Commissioner's order found that United had complied with that statutory provision either by executing gas storage agreements or securing options to acquire storage agreements or subleases covering the Pettit Formation.
[3] As we understand it the intermediate casing is placed inside the main casing.
[4] United contends that the storage reservoir contains 91,000,000,000 cubic feet of natural gas which is endangered by the proposed drilling operations.
[5] R.S. 30:12 provides:

"An interested person adversely affected by any law of this state with respect to conservation of oil or gas, or both, or by a provision of this Chapter, or by a rule, regulation, or order made by the commissioner hereunder, or by an act done or threatened thereunder, and who has exhausted his administrative remedy, may obtain court review and seek relief by a suit for an injunction against the commissioner as defendant. Suit shall be instituted in the district court of the parish in which the principal office of the commissioner is located and shall be tried summarily. The attorney representing the commissioner may have a case set for trial at any time after ten days' notice to the plaintiff or his attorney of record. The burden of proof shall be upon the plaintiff and all pertinent evidence with respect to the validity and reasonableness of the order of the commissioner complained of shall be admissible. The law, the provision of this Chapter, or the rule, regulation, or order complained of, shall be taken as prima facie valid. This presumption shall not be overcome in connection with any application for injunctive relief, including a temporary restraining order, by verified petition or affidavit of or in behalf of the applicant. The right of review accorded by this Section shall be inclusive of all other remedies, but the right of appeal shall lie as hereinafter set forth in this Chapter."
[6] R.S. 30.22, subd. D provides in pertinent part:

"The commissioner shall issue such orders, rules and regulations as may be necessary for the purpose of protecting any such underground storage reservoir, strata or formations against pollution or against the escape of natural gas therefrom, including such necessary rules and regulations as may pertain to the drilling into or through such underground storage reservoir." (Emphasis added).