526 So.2d 374 (1988)
KAISER ALUMINUM EXPLORATION COMPANY
v.
CELERON OIL AND GAS COMPANY, First Energy Corporation, Terra Resources, Inc., Union Texas Petroleum Corporation, TXO Production Corp., Borden, Inc., Triton Producing Company, Sabine Corporation and Ricky R. Berry.
No. CA-9229.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1988.
James B. Irwin, John Y. Pearce, Andrew M. Edwards, II, Montgomery, Barnett, Brown, Read, Hammon & Mintz, New Orleans, for appellee.
John M. Wilson, Stevia M. Walther, Liskow & Lewis, New Orleans, for appellants.
Before SCHOTT, BYRNES and LOBRANO, JJ.
*375 LOBRANO, Judge.
This is an appeal from the granting of a summary judgment determining that the Joint Operating Agreement (JOA) between Celeron Oil and Gas Co. (Celeron)[1] and Kaiser Aluminum Exploration Company (KAEC) fixed for all time KAEC's interest in a certain leased area. Celeron appealed and argues the JOA is ambiguous, that issues of material fact exist regarding the parties intentions and that KAEC's suit is an impermissible collateral attack on orders of the Commission of Conservation.
We determine that the JOA is ambiguous and susceptible of various interpretations. An issue of fact concerning the parties' intent exists, and thus a trial on the merits is necessary.
FACTS:
The basic undisputed facts are as follows. In 1978 South Louisiana Production Company (Celeron's ancestor in title in these proceedings) drilled a discovery well in the Irene Field in East Baton Rouge Parish. As a result of this discovery, the Commissioner of Conservation issued its order No. 1047. That order effectively established 20 square 640 acre geographic units. Each unit was subject to a joint operating agreement entered into by the various working interest owners. Included therein was the 640 acre unit designated as Sand Unit H (SUH) with the Baxter No. 1 well as the unit well. That unit was operated under a joint operating agreement (JOA) entered into on November 21, 1978 by KAEC and the other working interest owners, including Celeron's ancestor in title. An interpretation of that JOA is the issue in this suit.
Based on geological data obtained after the initial wells were drilled, the Commissioner of Conservation issued Order No. 1047-B, effective July 23, 1985, which dissolved the geographic units, and created six geological units. The former SUH unit comprising 640 acres, then became Sand Unit D (SUD), comprising 325.252 acres, with the Baxter No. 1 remaining as the unit well.
On December 22, 1986 the Commissioner of Conservation, again based on additional geological data, issued Order No. 1047-B-2 which created a single reservoir wide unit. The production from all wells is attributed to this one reservoir wide unit, and allocated on a pro-rata basis to the working interest owners.
KAEC opposed both order 1047-B and 1047-B-2. They attempted to redefine the unit area so as to include more of their leasehold acreage, but were unsuccessful. Since more than 75% of the interest owners agreed to the unit proposals, the Commissioner created the geological units. See, La.R.S. 30:5(C)(2)(d).
Thus, in the original geographic SUH, KAEC's participation in the Baxter No. 1 was set forth in the JOA at 33.5657%. However, because the geological unit, excludes a considerable portion of KAEC's leasehold acreage, its participation is considerably less.
As a result, KAEC filed this declaratory action seeking a judicial determination that it's interest in the original geographic SUH is fixed at 33.5657%, and that they are entitled to 33.5657% of the production attributable to that portion of SUH now lying within the new geological unit. The trial court granted KAEC's motion for summary judgment, and declared that KAEC "is entitled to a 33.5657% interest in production from or attributable to the Unit Area defined in said Baxter Operating Agreement and its exhibits."
A summary judgment shall be rendered if the pleadings and supporting documentation show there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.C.C.Pro. Art. 966. Summary judgment is not to be used as a substitute for a trial on the merits. Brister v. Parish of Jefferson, 393 *376 So.2d 883 (La.App. 4th Cir.1981). Only when reasonable minds must inevitably conclude that, based on the facts, as a matter of law mover is entitled to a judgment will summary judgment be proper. Chaisson v. Domingue, 372 So.2d 1225 (La.1979). In deciding whether all material issues have in fact been disposed of, any doubt is to be resolved against the granting of a summary judgment. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La. 1980).
We believe the decisive issue is whether the JOA is unambiguous in fixing, for all time, KAEC's participation in production attributable to the 640 acre unit.
In support of their motion KAEC relies on the affidavit of James Wessel, their regional manager, as well as the JOA, and the various Conservation Orders outlined above. The Wessel affidavit basically sets forth the identity of the working interest owners in the Irene Field, a chronological history of the various units created by the Commissioner, and a brief summary of their participation in costs and production as set forth in the JOA. It further states that Celeron prepared the JOA.
In opposition to KAEC's motion, Celeron submitted the affidavit of George Todd, the vice-president of the land division of Celeron. This affidavit sets forth Mr. Todd's duties in connection with lease maintenance, and the monitoring of performance under joint operating agreements. And, similar to the Wessel affidavit, it summarizes the chronology of the Irene Field, and the various unit configurations. However, Todd states that he was personally involved on behalf of Celeron in the negotiating and confecting of several JOA's in the Irene Field, including the one at issue herein, and that there were no discussions with respect to the permanent fixing of owners' interests. He further states that in his experience, parties never consider a JOA as permanently fixing interests unless there is a specific restriction to that effect. His conclusion is that Celeron never intended to fix the interests in the JOA, and that this conclusion is in accord with the customs and practices in the oil and gas industry in Louisiana.
Both parties cite various provisions of the JOA in support of their respective positions. KAEC urges paragraph 4, and the exhibits, both of which set forth the unit description and participation by the lease owners. They argue that these provisions exhibit the clear intent to fix for all time their participation in the unit acreage, and production attributable thereto.
Celeron cites paragraphs 25 and 28. Paragraph 28 provides that legal fees in defending lawsuits "shall be considered costs of operation and shall be charged to and paid by all parties in proportion to their then interests in the Unit Area." (emphasis ours). Paragraph 25 provides that any party who makes an acreage contribution in lieu of a cash contribution shall make an assignment "to all parties to this agreement in proportion to their interests in the unit area at that time" (emphasis ours). Celeron urges these paragraphs support their conclusion that the parties never intended their participation to be permanently fixed.
After a review of the entire JOA, the only conclusion we can reach at this time is that the agreement does not specifically state that the parties' interests are fixed for all time, nor does it specifically state the interests are not fixed.
KAEC also relies on the following cases, which we distinguish.
In Crow Drilling and Producing Company v. Hunt, 254 La. 662, 226 So.2d 487 (1969) suit was brought to determine the ownership of oil produced from wells on two leaseholds covered by an operating agreement. Before each well was drilled, the parties entered into a letter agreement fixing their interests regardless of whether there would be any changes in the acreage held by each party, except by loss of title. After these agreements were signed the parties executed an operating agreement which contained a provision for interests in production identical to Paragraph 4 of the Baxter agreement. After a trial on the merits, the trial court held that the interests changed when the surface acreage *377 ownership changed. The Court of Appeal reversed, construed the three agreements together and held the parties had fixed their respective shares in the production by contract. The Supreme Court affirmed the appellate court's decision, and stated that:
"Having construed the letter agreements to permit no change in plaintiffs' share of production, we observe a continuation of the intention pattern in the operating agreement. The operating agreement fixes the `percentage of participation' as specified in the previous letter agreements." Id. at 493.

The critical distinguishing feature of Crow is the fact that the matter was decided after a trial on the merits. The court made a determination of the parties' intent after review of all of the evidence. We find the following language pertinent.
"If, however, the intent of the parties be considered doubtful, the construction put upon the agreement by the parties themselves is one of the most reliable guides." Crow, supra at 493.

Southwest Gas Producing Co. v. Creslenn Oil Co., 181 So.2d 63 (La.App. 2nd Cir.1965), writs denied, 248 La. 797, 182 So.2d 74 (1966) was also decided after a trial on the merits. The court concluded that private contractual rights are only superseded when they are in conflict with valid orders of the Commissioner of Conservation, citing Monsanto Chemical Co. v. Southern Natural Gas Co., 234 La. 939, 102 So.2d 223 (1958). The Court upheld the operating agreement as fixing the parties share of production. However, the issue in that case was not the intent of the parties in fixing interests in the operating agreement, but whether private contract rights could be superseded by an arguably conflicting ruling of a regulatory agency.
Monsanto Chemical, supra, is similar to Creslenn Oil in its facts and holding. It also was decided after a trial on the merits and we distinguish it for the same reasons as Creslenn. That is, the issue of whether the operating agreement provided for a "fixed" percentage interest or a "floating" percentage interest was not argued. In fact, the court specifically noted "... we must assume that all parties to this proceeding take the position that there is no ambiguity in the language and that the defendants do not contend for a different construction than that contended for by the plaintiff...." Monsanto supra at 226.
The interpretation of a contract requires the determination of the intent of the parties. La.C.C. Art. 2045. When there is doubt, a provision "... must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after formation of the contract, and of other contracts of a like nature between the same parties." La.C.C. Art. 2053. If the parties have not specifically provided for a particular situation, "... it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity or usage regards as implied ... for the contract to achieve its purpose." La.C.C. Art. 2054. Usage is defined as the "... practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation." La.C.C. Art. 2055.
We determine that the JOA is ambiguous and susceptible of different interpretations. The Todd affidavit suggests issues contemplated by the above cited articles and which require judicial determination to properly interpret contractual intent. For example, Todd cites his experience in the industry with respect to similar agreements, and, in particular other agreements in the same Irene Field. Significantly, we note that KAEC takes a position contrary to the one in this suit with respect to other operating agreements in the Irene Field (McVea Unit) to which it is a party.
In general, we also note that there is a distinction between those voluntary pooling agreements entered into by parties for the purpose of settling title or boundary disputes prior to drilling and/or production, i.e. Crow, supra, and those operating agreements which delienate drilling or production units pursuant to unitization orders of the Commissioner. Apparently this case involves the latter situation, and we believe the intent of the parties may differ *378 depending upon the circumstances of the case.
Because we conclude that the JOA is ambiguous with respect to the issue raised by KAEC, we pretermit the question of whether the JOA has terminated and whether KAEC's suit is an impermissible attack on the Commissioner's Orders.
We reverse and remand for a trial on the merits.
REVERSED AND REMANDED.
NOTES
[1] The other defendants in this litigation are First Energy Corporation, Terra Resources, Inc., Union Texas Petroleum Corporation, TXO Production Corp., Borden, Inc., Triton Producing Company, Sabine Corporation and Ricky R. Berry. Since Celeron is the operator of the unit, we refer to all defendants as "Celeron".